IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,      :
                                    :
                        Appellant   :
                                    :
            v.                      : No. 599 C.D. 2019
                                    : Argued:  December 10, 2019
Allen Shoey                         :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                  FILED:  March 9, 2020


            The Commonwealth of Pennsylvania (Commonwealth) appeals from
the February 1, 2019 order of the Court of Common Pleas of York County (trial
court) finding Allen Shoey (Shoey) not guilty of violating West Manheim
Township (Township) Ordinance 04-2010 (Ordinance)[1] governing on-lot sewage
disposal systems after holding the Ordinance was inapplicable to vacant property.
Upon review, we reverse and remand the matter to the trial court for further
proceedings consistent with the following opinion.

            The facts are not in dispute.  Shoey owns the property located at 119
Impounding Dam Road in the Township (the Property).  The Property is improved

---

[1] Ordinance 04-2010, which was enacted September 2, 2010, amended Article VIII of the
Township's Code of Ordinances, On-Lot Disposal System (OLDS), §§207-28-42.

with a three-bedroom house, which is connected to an on-lot sewage disposal system. In July 2018, the Commonwealth filed a non-traffic citation and summons alleging that Shoey violated the Ordinance[2] by failing to have the Property's on-lot septic disposal system inspected and certified within the prescribed timeframe. Shoey pleaded not guilty to the charge.

In September 2018, the matter was heard by a Magisterial District Judge (MDJ), who found Shoey guilty and ordered him to pay restitution, plus fines and costs. Shoey timely appealed to the trial court. Before the trial court heard the appeal, the Property was inspected pursuant to the Ordinance. In January 2019, the trial court held a *de novo* non-jury trial on the summary appeal.

---

[2] In relevant part, the Ordinance provides:

> A. Within two years from the effective date of this Part 2, all on-lot sewage disposal systems, cesspools or dry wells within [the] Township must be inspected and certified to be in proper working order by the Township's Sewage Enforcement Officer (SEO). Thereafter, on-lot disposal systems must be inspected and certified every four years. The SEO inspection shall be conducted in accordance with all applicable state and federal regulations. All costs associated with inspection, pumping and remediation shall be the responsibility of the property owner; the fees associated with the SEO services shall be established by resolution of the Board of Supervisors.
>
> B. The Township will send, via regular United States Mail, notice to the property owner that the on-lot disposal system is due for inspection and certification. Within 45 days from receiving notice of the intent to inspect from the Township, the owner must schedule an appointment with the SEO.

Township's OLDS (On-Lot Disposal System) Management Ordinance §207-34. Reproduced Record (R.R.) Item No. 3 at 10.

2

Heather Bair (Bair), the Township's Code Enforcement Officer, testified that the Township had mailed notices to Shoey in June 2013, December 2017, and April 2018, requesting compliance with the Ordinance's inspection and certification requirement. N.T. 1/30/19[3] at 27-28. Shoey did not respond. *Id.* Bair testified that, in April 2018, the Township attempted to work with Shoey and his attorney to schedule an inspection of the on-lot sewage disposal system pursuant to the Ordinance. *Id.* at 28. The Township's attempts to work with Shoey failed, and the Township issued the July 2018 non-traffic citation for a summary offense based on Shoey's failure to timely comply with the Ordinance's inspection and certification requirement. *Id.* Bair testified that Shoey submitted documents to the MDJ in which he claimed that the Property was unoccupied, and admitted that the on-lot sewage disposal system was not functioning and had not functioned for 18 years. *Id.* at 29.

Douglas Stambaugh (Stambaugh), the Township's SEO, testified that his inspections of the Property in January 2019, revealed that the "septic tank outlet was blocked with tree roots from an adjacent maple tree." N.T. 1/30/19 at 12. Because of the intrusive tree roots, the septic tank's water level was higher than normal, but Stambaugh did not know the source of the water in the tank. *Id.* at 12, 17. The tree roots also were growing into the leach field portion of the on-lot sewage disposal system. *Id.* The on-lot sewage disposal system failed inspection because of these malfunctions. *Id.* at 13.

Nathan Jefferson (Jefferson), an SEO certified by the National Sanitation Foundation and the Pennsylvania Septage Management Association,

---

[3] "N.T. 1/30/19" refers to the transcript of the January 30, 2019 trial court hearing, R.R. Item No. 2.

was hired by Shoey to inspect the Property. N.T. 1/30/19 at 18. Jefferson testified that the Ordinance requires "a serviceable septic tank and also an absorption system, which we would call a drain field[.]" *Id.* at 19. Jefferson agreed with Stambaugh's conclusion that the on-lot sewage disposal system is malfunctioning in its current state. *Id.* at 21. Jefferson further opined that repairing the system could cost between $6,000 and $9,000, and a total replacement of the system could cost between $10,000 and $25,000. *Id.* at 22-23, 24-25.

Shoey, who is 83 years old, testified that the Property had not been occupied since 2000 and that he currently uses it exclusively for storage. N.T. 1/30/19 at 33-34. Shoey asserted that the well's water pump is not currently operational, and that no sewage has been discharged out of the Property since 2000. *Id.* at 34, 39. However, Shoey did not dispute Stambaugh's and Jefferson's conclusion that the on-lot sewage disposal system is presently malfunctioning. *Id.* at 33-34, 37. Shoey further testified that the residence is beyond repair and that he considers it uninhabitable. *Id.* at 36.

The trial court ultimately determined that the Ordinance does not apply to vacant property and acquitted Shoey of the charge, but ordered Shoey to disconnect the Property from the existing on-lot sewage disposal system. In the opinion filed in support of its order, the trial court stated, in relevant part:

> [The Ordinance] covers the use of on-lot sewage disposal systems. This section of the Ordinance applies to "all persons owning any property in the Township serviced by an on-lot sewage disposal system." The purpose of this Ordinance is to "provide for adequate sewage treatment facilities and for the protection of the public health by preventing the discharge of untreated or inadequately treated sewage . . . permit the Township to intervene in situations which are public nuisances or

4

hazards to the public health." It is important to note that there is no section in the Ordinance for disconnecting the on-lot sewage disposal system [for] a property that is no longer being used for continuous or periodic habitation[.]

Under the canons of statutory construction, "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." [1 Pa. C.S. §1921.] In this case, the language of the Ordinance is clear; it applies to properties that are "serviced by an on-lot sewage disposal system." The Definitions and word usage section of the Ordinance does not specifically define "serviced by," we then analyze it by its traditional definition. One of the definitions of "service" in Black's Law Dictionary is "the official work or duty that one is required to perform." The work that an on-lot sewage disposal system performs is to collect and dispose of discharged sewage in a safe and sanitary way. Therefore, analyzing the Ordinance under the canon of statutory construction, the Ordinance does not apply to the [Property] owned by [Shoey] as it is vacant, there is no sewage being discharged from it and it is not currently being serviced by an on-lot sewage disposal system.

* * *

As the Ordinance does not apply to [Shoey], we find him not guilty of violating [the Ordinance]. We shall require that [Shoey] disconnect the [Property] from the on-lot sewage disposal system.

Trial Court 2/1/19 Opinion at 2-4 (footnotes omitted). The Commonwealth appealed to the Superior Court, and the case was subsequently transferred to this Court.

On appeal, the Commonwealth argues that the trial court erred in its interpretation of the Ordinance, incorrectly applied the rules of statutory

5

construction, and failed to consider the plain language and relevant statutory and regulatory scheme. The Commonwealth argues that the Ordinance and the Pennsylvania Sewage Facilities Act (Act 537),[4] when read *in pari materia*, clearly establish that the Ordinance governs all on-lot sewage disposal systems existing within the municipality, without an exception for vacant or unoccupied properties. Accordingly, Shoey must maintain the on-lot sewage disposal system at the Property. The Commonwealth asks this Court to reverse the trial court's decision and to find Shoey guilty of violating the Ordinance.

Shoey counters that the trial court correctly held that the Property's septic system is not an "on-lot sewage disposal system" under the plain language of the Ordinance. He argues that the trial court properly applied the law to the facts of this case.[5]

"The interpretation of a statute or ordinance presents this Court with a pure question of law, which is generally subject to plenary review." *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015). However, courts traditionally accord the agency charged with administering the ordinance great weight and deference. *In re Thompson*, 896 A.2d 659, 669 (Pa. Cmwlth. 2006).

---

[4] Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§750.1-750.20a.

[5] On June 11, 2019, Shoey filed a motion to quash the appeal, asserting that the Commonwealth is unable to appeal his acquittal because of the prohibition against double jeopardy. By July 19, 2019 order, this Court denied the motion to quash, finding the Commonwealth has a right to appeal because the trial court's ruling was based purely on a question of law. In this appeal, Shoey maintains that the trial court's acquittal was based on a factual determination that there is no on-lot sewage disposal system in existence on the Property. Having previously determined that the trial court's decision was based purely on a question of law, we will not accede to Shoey's request that we reconsider our disposition of the issue.

The rules of statutory construction are applicable to ordinances. *In re Thompson*, 896 A.2d at 669. The primary objective of statutory interpretation is to determine the intent of the enacting legislation. Section 1921 of the Statutory Construction Act of 1972 (Act), 1 Pa. C.S. §1921. A statute's or ordinance's plain language generally provides the best indication of legislative intent, and, therefore, statutory construction begins with an examination of the text itself. *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 918 A.2d 171, 176 (Pa. Cmwlth. 2007). Section 1903(a) of the Act states:

> Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa. C.S. §1903(a).

In the relevant part, the Ordinance states:

**§207-28 Title; legislative authority; purpose**.

* * *

> B. [M]unicipalities have the power and duty to provide for adequate sewage treatment facilities and for the protection of the public health by preventing the discharge of untreated or inadequately treated sewage.

* * *

> C. The purpose of this Part 2 is to provide for the inspection, maintenance and rehabilitation of on-lot sewage disposal systems; to further permit the Township to intervene in situations which are public nuisances or

7

hazards to the public health; and to establish penalties and appeal procedures necessary for the proper administration of a sewage management program.

### §207-29 Definitions and word usage.

\* \* \*

MANAGEMENT PROGRAM – The management program *shall encompass the entire area of* [*the*] *Township serviced by sewage facilities* or any *other alternative system which discharges into the soils of the Township*. All systems shall be operated under the jurisdiction of the [Township's] Board of Supervisors regulating the subsurface disposal and/or alternate systems, and other applicable laws of the Commonwealth of Pennsylvania.

\* \* \*

SEWAGE MANAGEMENT PROGRAM – A *comprehensive set of legal and administrative requirements* encompassing the requirements of this Part 2, the [Pennsylvania] Sewage Facilities Act, The Clean Streams Law,[6] the regulations promulgated thereunder and such other requirements adopted by the Board of Supervisors to effectively enforce and administer this Part 2[.]

### §207-30 Applicability

From the effective date of this Part 2, *its provisions shall apply to all persons owning any property in the Township serviced by an on-lot sewage disposal system* and to all persons installing or rehabilitating on-lot sewage disposal systems.

---

[6] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001.

**§207-34 Inspections.**

A. Within two years from the effective date of this Part 2, *all on-lot sewage disposal systems*, cesspools or dry wells within West Manheim Township must be *inspected and certified to be in proper working order* by the Township's [SEO]. Thereafter, on-lot disposal systems must be inspected and certified every four years. The SEO's inspection shall be conducted in accordance with all applicable state and federal regulations. *All costs associated with inspection, pumping and remediation shall be the responsibility of the property owner*; the fees associated with the SEO services shall be established by resolution of the Board of Supervisors.

\* \* \*

F. The Township's authorized agent shall inspect systems known to be, or alleged to be, malfunctioning. Should said inspections reveal that the system is malfunctioning, the Township shall take action to require the correction of the malfunction[.]

\* \* \*

**§207-37 Malfunctions and rehabilitation.**

A. *No person shall operate and maintain an on-lot sewage disposal system in such a manner that it malfunctions.* All liquid wastes and water softener backwash, shall be discharged to a treatment tank. No sewage system shall discharge untreated or partially treated sewage to the surface of the ground or into the waters of the Commonwealth of Pennsylvania unless a permit to discharge has been obtained from DEP.

B. The Township shall issue a written notice of violation to any person who is the *owner of a property in the*

*Township which is found to be served by a malfunctioning on-lot sewage disposal system* or which is discharging raw or partially treated sewage without a permit.

\* \* \*

**§207-42 Violations and Penalties.**

Any person failing to comply with any provision of this Part 2 shall be subject to the summary offense penalties of 35 P.S. §750.13 and, in addition thereto, may be subject to the civil penalties of 35 P.S. §750.13a. Each day following the forty-five-day scheduling period provided in §207-34B hereof that the owner fails to make arrangement for inspection with the Township SEO and/or fails to have the on-site sewage system inspected, certified, and pumped shall constitute a separate and distinct offense.

OLDS §207-28-207-42 (emphasis added). R.R. Item No. 3 at 1, 3, 5, 9-10, 13, 16.

In this case, the trial court determined that the Ordinance does not apply to the Property based on the dictionary definition of the noun "service" as "the official work or duty that one is required to perform." Trial Court 2/1/19 Opinion at 3. The trial court reasoned that an on-lot disposal system's work is to collect and dispose of sewage; if there is no discharged sewage, then the home is not currently being "serviced by" an on-lot disposal system.

While this Court may consult dictionaries to ascertain the common and approved usage of words, *see Moonlite Café, Inc. v. Department of Health*, 23 A.3d 1111, 1114 (Pa. Cmwlth. 2011), in this case the dictionary definition is not the most helpful. The definition of "service" is imprecise as applied to the phrase "serviced by" when considering the object of the sentence, "on-lot sewage disposal system." OLDS §207-30. Such a "technical phrase[] . . . [that has] acquired a

10

peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning or definition." Section 1903(a) of the Act, 1 Pa. C.S. §1903(a). Over 20% of houses in the United States do not have access to a public sewer and rely on a septic system.[7] Whichever system a structure is connected to is the system that "services" the structure. *See* Section 5 of Act 537, 35 P.S. §750.5(a) ("Each municipality shall submit to the department an officially adopted plan for sewage services for areas within its jurisdiction[.]").

Further, where two parts of an ordinance relate to the same persons or things, those parts are to be construed concurrently. *Cozzone ex rel. Cozzone v. Workers' Compensation Appeal Board (PA Municipal/East Goshen Township)*, 73 A.3d 526, 536 (Pa. 2013). The trial court failed to read all provisions of the Ordinance *in pari materia*. When read together, it is apparent that the Ordinance covers **all** on-lot sewage disposal systems, regardless of the occupancy status of the structure. *See* OLDS §207-29, R.R. Item No. 3 at 3 ("The management program . . . shall encompass the entire area of [the] . . . other alternative system which discharges into the soils of the Township. All systems shall be operated under the jurisdiction of the [Township's] Board of Supervisors regulating the subsurface disposal and/or alternate systems[.]"). *See also* OLDS §207-30, R.R. Item No. 3 at 5 ("Part 2 . . . shall apply to all persons owning any property in the Township serviced by an on-lot sewage disposal system and to all persons installing or rehabilitating on-lot sewage disposal systems[.]"). Therefore, we conclude the trial court erred in acquitting Shoey of the charge on the basis that the Property is not subject to the provisions of the Ordinance.

---

[7] *See* https://www.epa.gov/septic/septic-systems-overview (last visited February 6, 2020).

Accordingly, the trial court's order is reversed and the matter is remanded for the trial court to reconsider its disposition of Shoey's summary appeal, and to determine Shoey's guilt or innocence under the applicable provisions of the Ordinance. *Commonwealth v. Arnold*, 258 A.2d 885, 888 (Pa. Super. 1969); *Commonwealth ex rel. Borough of Dormont v. Pahlman*, 179 A. 910, 911-13 (Pa. Super. 1935).

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
:
Appellant :
:
v. : No. 599 C.D. 2019
:
Allen Shoey :

# **O R D E R**

AND NOW, this 9th day of March, 2020, the order of the Court of Common Pleas of York County (trial court), dated February 1, 2019, is hereby REVERSED. The matter is REMANDED to the trial court with the direction to address anew, in accordance with the foregoing opinion, the summary appeal before it.

Jurisdiction is RELINQUISHED.

_____
MICHAEL H. WOJCIK, Judge